The judgment of the court was pronounced by
Slidell, J.
This action is upon an open policy upon 307 packages of tobacco, shipped by the plaintiff from New Orleans to Charleston, and which, with the exception of two passages, was sold at auction at Charleston, as damaged, for account of whom it might concern, after a survey by port wardens. The policy given by the defendants was to an amount of $5000; and one for $2000 was given by another office. The damaged tobacco produced at auction gross $1211 09. The plaintiff claimed under this policy the sum of $3771 26, and had a verdict for that amount. The defendant has appealed. ,
The point of seaworthiness does not seem to us so clearly in favor of the plaintiff as was assumed by his counsel in argument. We do not, however, deem it necessary to form and express an opinion upon that point, since upon other grounds we think the judgment must be reversed.
There is no doubt a large portion of the tobacco upon its arrival in Charleston was in a damaged condition. The question is whether this damage is attributable in whole or in part to perils of the sea; and if in part to such causes, to *707 what extent. Before noticing the evidence upon this subject, it is proper to recur to the terms of the policy. It stipulates “ that the insurers shall not be fiable for damage or injury to goods by dampness, change of flavor, or by being spotted, discolored or mouldy, unless the same be caused by actual contact of sea water with the articles so damaged.” It is also “ provided, that no loss except general average shall in any case be paid, unless amounting to five per cent, after deducting proceeds of savings, if any, and exclusive in each case of all charges and expenses of ascertaining and proving the loss.”
It appears that soon after the vessel got to sea she was found to be leaking, without stress of weather. This leak seems not to have injured the tobacco. Subsequently, however, tempestuous weather was encountered, which caused further exposure of the cargo to salt water; and the evidence justifies the conclusion that the salt water came into actual contact with some of the packages of tobacco. Soon after the vessel’s arrival at Charleston a survey was made on shipboard by two wardens of that port, who by their report represent two hundred and twenty five boxes of the tobacco as “ wet, damp and stained, some very slightly, owing to leaks through deck and waterway seams.” In a second report, made on the following day by two merchants at the request of the consignees, upon examination after landing, they state “that they found three hundred and five boxes of the tobacco damaged by salt water; some of the boxes which did not appear damaged on the outside, on being opened were found to be damaged.” They recommended a sale at auction for account of whom it might concern. They also furnished an estimate of what the tobacco would be worth in the Charleston market, if in a sound and merchantable state. A sale of the three hundred and five boxes was soon after made at auction.
These merchants were examined under commission by the plaintiff. From their testimony it appears .that they made a subsequent examination, which brought them to a different opinion, They state that upon the examination previous to their report, they had formed the opinion that the tobacco was damaged by salt water. That they saw the tobacco afterwards, and made a more full and thorough examination. They then became convinced that it had been more injured by age and frequent transportation than by salt water. The variety of marks upon the boxes indicated that it had passed through many hands. It was moulded and dry, and the boxes decayed: circumstances indicative of age. Apparently disappointed by the result of this examination of his witnesses, the plaintiff took out a second commission to examine the same persons. They still adhered to the conclusion adopted upon their second examination of the tobacco ; which it appears was made by one of them at the exposure for public sale, which took place soon after the arrival at Charleston, and by the other at the request of the Charleston underwriters, who had expressed themselves not satisfied as to the injury of the tobacco on the voyage.
Those witnesses are perhaps reprehensible for having acted at first without a sufficiently minute examination; but their change of opinion seems to have been the result of honest conviction, upon further and fuller examination. Besides their testimony, there is evidence tending strongly to corroborate the conclusion that the deterioration of the tobacco was largely attributable to age and the effects of previous transportations. It is proved that an important portion of it had been received a year before at New Orleans from Mobile, shipped to Vera Cruz, and brought back. A witness, who was at the time the plaintiff’s agent, states that it was on its return from Vera Cruz dry, mouldy and rotten, with age. *708 There is also reason to believe that the residue of the shipment had been on hand a good while, and had become deteriorated by age and other causes. The plaintiff has not thought proper to fux'nish evidence as to the quality and condition of the merchandise before the shipment, beyond the bill of lading.
The result of a careful examination of all the evidence by this court is an inability to deduce from it, with anything like reasonable certainty, a just estimate of the proportion of injury attributable to perils of the sea encountered upon the voyage insured. It is proper also to add, that the evidence is defective upon the subject of value. If the underwriter in this case is answerable at all for a partial loss, it is with reference to the market value at the port of departure.
It is therefore ordered,.adjudged and decreed, that the judgment of the court below be reversedand' judgment is now rendered as in case of non-suit; the plaintiff to pay costs irrboth courts.